IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK J. NAPOLITANO, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TOWN SPORTS INTERNATIONAL | : | |
| HOLDINGS INC., TOWN SPORTS | : | |
| INTERNATIONAL INC. | : | NO. 07-755 |

## ORDER - MEMORANDUM

**AND NOW**, this 23rd day of May, 2007, upon consideration of Defendants' Motion to Dismiss or to Change Venue (Docket Entry # 2), Plaintiff's Response thereto (Docket Entry #4), the Motion of Defendants' for Leave to File a Reply Memorandum, (Docket Entry # 13) and said Reply Memorandum, **IT IS HEREBY ORDERED** that:

1. The motion for Leave to File a Reply Memorandum is **GRANTED**.

2. The Motion to Dismiss or to Change Venue is **GRANTED** as follows:

   A. The Motion to Dismiss is **GRANTED** as to Defendant Town Sports International, Inc. Defendant Town Sports International, Inc. is **DISMISSED**.

   B. The Motion to Change Venue is **GRANTED** as to Defendant Town Sports International Holdings, Inc.

   C. This action is **TRANSFERRED** to the United States District Court for

-1-

the Southern District of New York.

Plaintiff Frank J. Napolitano, Jr. filed a Complaint against Defendants Town Sports International Holdings, Inc. ("Holdings") and Town Sports International, Inc. ("International") raising a claim in equity for specific performance and a legal claim for breach of contract arising from two stock option agreements. Presently before the Court is a motion by Defendants to dismiss for failure to state a claim upon which relief may be granted, for want of personal jurisdiction over Defendant Holdings, or, in the alternative, to transfer venue to the United States District Court for the Southern District of New York. We find that Defendant International must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because the Complaint does not allege that International breached the agreements. We also find that we have no personal jurisdiction over Defendant Holdings. Accordingly, the surviving claims against Holdings will be transferred.

The Complaint alleges that Napolitano was employed by an entity called TSI Highpoint, LLC ("Highpoint"). (Compl. ¶ 8.) Holdings and/or International is alleged to hold a controlling interest in Highpoint. (Id.) On May 31, 2000, Napolitano and International entered into a stock option agreement as part of Plaintiff's employment compensation with Highpoint ("the First Option"). (Id. ¶ 9.) On July 23, 2003, Napolitano and International entered into an additional agreement granting Plaintiff the option to purchase 1,000 shares of International ("the Second Option"). (Id. ¶ 17.) Later, International was reorganized as a wholly-owned subsidiary of Holdings, leading Plaintiff, International and Holdings to enter into a "New 2000 Common Stock Option Agreement" on February 4, 2004 ("the New 2000 Option"), by which the First Option was converted into an option to purchase 6,600 shares of Holdings. (Id. ¶ 10.) On the same date, the parties entered into a "New 2003 Common Stock Option Agreement" ("the New 2003 Option"), by which the Second Option

was converted into an option to purchase 1,000 shares of Holdings. (Id. ¶ 18.) Napolitano alleges that, as of June 8, 2006, he held vested options under the New 2000 Option to purchase 55,440 shares of Holdings at a price per share of $5.36. (Id. ¶ 16.) He also alleges that he held vested options under the New 2003 Option to purchase 2,800 shares of Holdings at a price per share of $10.29. (Id. ¶ 22.)

Plaintiff was terminated by Highpoint on June 8, 2006. (Id. ¶ 27.) However, he remains party to a consulting agreement through June 2007. (Id. ¶ 28.) Napolitano alleges that he notified Defendants of his intent to exercise the New 2000 Option and the New 2003 Option "on or about June 21, 2006, effective September 5, 2006, and defendant had actual and constructive notice of plaintiff's intent to exercise both options." (Id. ¶ 30.) After being advised that Defendants claimed not to have notice of his intent to exercise the Options, Napolitano provided a second notice in an email dated November 1, 2006. (Id. ¶¶ 31-32.) He alleges that he has fully performed the services required of him under the New 2000 Option and the New 2003 Option agreements, that his rights thereunder are fully vested, but that the Defendants have declined to proffer the shares. (Id. ¶¶ 33-35.)

In their Motion, Holdings asserts that, through operating subsidiaries, it owns and operates fitness centers in the Northeast and Mid-Atlantic regions of the United States. However, its corporate offices and principal place of business are in New York, and it has no presence in the Commonwealth of Pennsylvania. It alleges that it is not authorized, licensed or registered to do business in the Commonwealth; owns no real property, maintains no offices, and has no business or employees in Pennsylvania. (Pyle Decl. ¶¶ 2-3.) It asserts that Napolitano was never an employee of Holdings. (Id. ¶ 5; Compl. ¶ 8.) Indeed, it claims that it has no employees other than unpaid

corporate officers, all of whom work in New York. (Pyle Decl. ¶ 3.) Holdings asserts that Napolitano alleges only that he attempted to execute his options by leaving a letter at Holdings' New York offices and by later emailing a letter to Holdings' New York offices. (Id. ¶¶ 9-10.) Finally, it asserts that the agreements were negotiated and formed in New York, executed by it in New York, and the decision not to issue the stock was made in New York. (Id. ¶ 11.) As such, Holdings argues, pursuant to Fed. R. Civ. P. 12(b)(2), that it is not subject to general or specific personal jurisdiction in Pennsylvania.

In response to the jurisdictional averments, Napolitano has submitted his own Declaration stating that: (1) he is a Pennsylvania resident and worked primarily in Pennsylvania; (2) his employer was Highpoint, which withheld Pennsylvania state income tax from his salary; (3) Holdings was aware of his residency and place of work through its ownership of International and because Holdings' former CEO Mark Smith dealt with Plaintiff; (4) the discussions leading to the New 2000 and New 2003 Options occurred by telephone and in person, and both in Pennsylvania and New York, including a visit to Pennsylvania by Smith; (5) the accounting, employment policies, names and logos for all of Holdings' subsidiaries are consolidated and highly centralized; and (6) Holdings "directs" a substantial amount of business in Pennsylvania through its subsidiaries. (Napolitano Decl. ¶¶ 2; 8-14.) Napolitano does not dispute that the options contracts were signed in New York, that performance was to take place in New York, and that the alleged breach occurred in New York. He also does not dispute Holdings' contention that it has no employees. We find the Plaintiff's submission on jurisdiction are insufficient.

"[I]n reviewing a motion to dismiss under Rule 12(b)(2), we 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" Pinker v. Roche Holdings,

Ltd., 292 F.3d 361 (3d Cir. 2002) (quoting Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). Once a defendant has properly raised a jurisdictional defense, the plaintiffs bear the burden of proving, either by sworn affidavits or other competent evidence, sufficient contacts with the forum state to establish personal jurisdiction. North Penn Gas v. Corning Natural Gas, 897 F.2d 687, 689 (3d Cir. 1990) (per curium); Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (1984). "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there.'" North Penn Gas, 897 F.2d at 690 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "Specific jurisdiction is established when a nonresident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from, or is related to, those activities. General Elec. Comp. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). To assert general jurisdiction, the plaintiff must establish that the defendant's contacts with the forum state were "continuous and substantial." Provident National Bank v. California Federal Savings & Loan Association, 819 F.2d 434, 437 (3d Cir. 1987); Gehling v. St. George's School of Medicine, 773 F.2d 539, 541 (3d Cir. 1985). "In determining jurisdiction over a breach of contract claim, we must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

Napolitano does not contest Holdings' assertions that the New 2000 Option and New 2003 Option agreements were negotiated, executed and allegedly breached in New York. The only connection to the Commonwealth is that Napolitano was employed here and that Smith visited him here. However, his employer was Highpoint, not Holdings. That Holdings was "aware" of his

residency and place of work through its ownership of International, and maintained centralized accounting and human resources functions in New York, do not establish that it purposefully availed itself of this jurisdiction. At best, its connection to Napolitano's efforts in the Commonwealth – through its ownership of International and International's ownership of Highpoint – is two steps removed from the minimum contacts necessary to establish specific jurisdiction. Napolitano's other assertion of minimum contacts – that Mark Smith visited him here – is also insufficient to establish jurisdiction. Napolitano states that the options agreements "were form documents, and not negotiated as to terms." (Napolitano Decl. ¶ 9.) He also identifies Smith as the "former CEO" of Holdings. (Id. at ¶ 10.) While he claims to have had "discussions" with Smith about the original option agreements, (Id. at 9), he makes no similar claim regarding the New 2000 Option and New 2003 Option agreements that replaced them and that form the basis of Napolitano's claims. Accordingly, we find that the totality of the circumstances surrounding the negotiation, execution and breach of the New 2000 Option and New 2003 Option agreements fail to establish minimum contacts with the Commonwealth of Pennsylvania.[1]

---

[1] We also reject Plaintiff's arguments regarding general jurisdiction. He first asserts that a second employee was similarly situated to him in Pennsylvania and that Holdings' activities with respect to two persons in Pennsylvania demonstrates general jurisdiction through continuous and substantial contacts, even if its activities with respect to only the Plaintiff fails to satisfy specific jurisdiction. The fact that Plaintiff had a co-worker employed under similar circumstances could not, we find, satisfy specific jurisdiction, let alone general jurisdiction.

More substantially, Napolitano asserts that under an alter ego analysis, we may exercise general jurisdiction over Holdings based on the activities of its subsidiaries in Pennsylvania. See Simone v. Bombardier-Rotax GmbH, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005) (holding that ten factors are to be analyzed to determine whether the forum activities of subsidiary could be construed as activities of the parent: (1) ownership of all or most of the stock of the subsidiary; (2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) performance of business functions by the subsidiary which the principal corporation would normally conduct through its own agents or departments; (9) marketing by the

International argues that it must be dismissed because the Plaintiff does not allege that it breached any obligations in New 2000 Option and New 2003 Option.[2] It asserts that, while it is a party to the New 2000 Option and New 2003 Option agreements – by virtue of the fact that it was the stock issuer obligated under the superceded agreements – Napolitano has not alleged that International had any affirmative obligation under the New 2000 Option and the New 2003 Option agreements that were allegedly breached. We agree.

Using identical language, the New 2000 Option and New 2003 Option agreements provide that,

> WHEREAS [Napolitano] was previously granted options . . . to purchase . . . Class A Common Stock . . . of [International];
> WHEREAS [International, Holdings and Napolitano] and certain other stockholders of [International] entered into a Restructuring Agreement . . . pursuant to which [International] was reorganized as a wholly owned subsidiary of [Holdings] and all Stockholders contributed and exchanged all of the respective shares of capital stock of [International] for an equal number of shares of capital stock in [Holdings]
> . . .

---

subsidiary on behalf of the principal corporation, or as the principal's exclusive distributor; and (10) receipt by the officers of the subsidiary corporation of instruction from the principal corporation). Other than the facts that Holdings is the owner of the stock of International – which in turn owns the stock of Highpoint – and that the companies use common logos, Plaintiff has come forward with no evidence, by way of his affidavit or other competent evidence, to show that the companies are alter egos. Accordingly, we find that there is no basis to exercise general jurisdiction over Holdings.

[2] When determining a motion to dismiss pursuant to Rule 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). However, the court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). In considering a Rule 12(b)(6) motion, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, No. 05-1126, 2007 WL 1461066, *14 (U.S. May 21, 2007).

> NOW, THEREFORE, . . . the parties to this Agreement hereby agree as follows:
>
> . . .
>
> Subject to [Napolitano] executing and delivering to [Holdings] the Stockholders Agreement and the Executive Stock Agreement . . . [Holdings] hereby grants to [Napolitano], as of the date hereof, an option . . . to purchase up to 6,600 shares of [Holdings'] Class A Common subject to terms and conditions set forth herein.

(Compl. Ex. A at 1, 6; Compl. Ex. C at 1, 6.) Other than in the recitals, International is not mentioned in either agreement. The duty to issue the options under the agreements belonged only to Holdings. Contrary to Napolitano's argument, which we note is unsupported by any citation to authority or specific language in the agreements, there is nothing to indicate that the agreements created a duty on International to guarantee or indemnify Holdings' obligations. Rather, the format, construction and general terms of the contract indicate that the prior duties on International to issue options was entirely replaced by the newly created duties placed on Holdings. In other words the New 2000 Option and the New 2003 Option constituted novations under New York law. Bank of New York, Albany v. Hirschfeld, 345 N.Y.S.2d 288, 290 (Sup. Ct. 1973) ("Novation means a substitution of a new contract between same or different parties and/or the substitution of a new debt or obligation for an existing one. The requisites of a novation are a previous valid obligation, an agreement of all the parties to a new contract, the extinguishment of the old obligation and the validity of the new one.") (citing 15 Williston on Contracts, Section 1865). Accordingly, as Holdings is the only party obligated under the novations, we conclude that the Complaint fails to state a claim for which relief may be granted against International.

Because Napolitano's claims for breach and specific performance can lie only against Holdings, a party over which we have no personal jurisdiction, we find that venue in this District is inappropriate under 28 U.S.C. § 1391(a) and transfer the action to the United States District Court

for the Southern District of New York, pursuant to 28 U.S.C. § 1406.

BY THE COURT:

_____
John R. Padova, J.